[Cite as *State v. Arnwine*, 2022-Ohio-3186.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

CHERIA J. ARNWINE,

    DEFENDANT-APPELLANT.

CASE NO. 16-21-04

O P I N I O N

Appeal from Wyandot County Common Pleas Court
Trial Court No. 20-CR-0125

Judgment Affirmed

Date of Decision: September 12, 2022

APPEARANCES:

    *Erin M. Branham* for Appellant

    *Douglas D. Rowland* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Cheria J. Arnwine ("Arnwine") brings this appeal from the judgment of the Court of Common Pleas of Wyandot County accepting her guilty pleas to Aggravated Vehicular Assault, Improperly Handling a Firearm in a Motor Vehicle and Operating a Vehicle While Under the Influence of Alcohol, and sentencing her for those convictions. On appeal, Arnwine claims that 1) the trial court failed to comply with Criminal Rule 11; 2) the trial court erred accepting the guilty plea when Arnwine lacked the requisite mens rea for the improper handling of a firearm in a motor vehicle charge; and 3) the trial court should have permitted Arnwine to withdraw her guilty plea. For the reasons set forth below, the judgment is affirmed.

{¶2} On October 24, 2021, Arnwine was involved in a traffic accident. She was eventually placed in the patrol car, where the officer noticed the odor of an alcoholic beverage on her person. The officer then conducted field-sobriety tests on Arnwine. Additionally, a search of her vehicle produced a firearm secured in a lockbox and inside a duffel bag. On November 18, 2020, the Wyandot County Grand Jury indicted Arnwine on five counts: 1) Aggravated Vehicular Assault in violation of R.C. 2903.08(A)(1)(a), a felony of the third degree; 2) Aggravated Vehicular Assault in violation of R.C. 2903.08(A)(1)(a), a felony of the third degree; 3) Improper Handling Firearms in a Motor Vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree; 4) Improper Handling Firearms in a

Motor Vehicle in violation of R.C. 2923.16(D)(1), a felony of the fifth degree; and 5) Operating a Vehicle While Under the Influence of Alcohol and/or Drug of Abuse in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree. Doc. 1. On July 13, 2021, Arnwine entered pleas of guilty to Count One, Aggravated Vehicular Assault, Count Four, Improper Handling Firearms in a Motor Vehicle, and Count Five, Operating a Vehicle While Under the Influence of Alcohol and/or Drug of Abuse, a misdemeanor of the first degree. Doc. 30. In exchange for the guilty pleas, the State agreed to dismiss Counts Two and Three. Doc. 30.

{¶3} A change of plea hearing was held on July 13, 2021. Doc. 31. Following the Criminal Rule 11 dialogue, the trial court accepted Arnwine's guilty pleas and, after a presentation of facts by the State found Arnwine guilty of Counts One, Four, and Five, and dismissed Counts Two and Three. July 13, 2021 Tr. 17. The trial court then found Arnwine guilty of Counts One, Four, and Five. Doc. 31 at 5.

{¶4} The sentencing hearing was held on September 22, 2021. Doc. 34. The judgment entry noted that Counts Two and Three were previously dismissed. Doc. 34 at 2. The trial court sentenced Arnwine to 36 months in prison as to Count One, 11 months in prison as to Count Four, and 160 days in the Wyandot County Jail as to Count Five, with the sentences to be served concurrently. Doc. 34 at 5. Arnwine filed a notice of appeal. On January 7, 2022, Arnwine filed a motion to withdraw her plea. Doc. 46. The trial court overruled the motion on March 15, 2022. Doc.

On March 29, 2022, Arnwine filed a motion to amend her notice of appeal to include the judgment on her motion to withdraw her plea. This Court granted that motion on April 6, 2022. On appeal, Arnwine raises the following assignments of error.

### First Assignment of Error

**The trial court erred when it accepted [Arnwine's] guilty plea after failing to notify [Arnwine] of the maximum penalties and ineligibility for probation during the Crim.R. 11 plea colloquy.**

### Second Assignment of Error

**The trial court erred in accepting [Arnwine's] plea agreement where she lacked the requisite mens rea for the for improper handling charge.**

### Third Assignment of Error

**The trial court erred in denying [Arnwine's] motion to withdraw [her] plea where [Arnwine] was denied her rights to the effective assistance of counsel and due process as guaranteed by the Sixth and Fourteenth Amendments.**

*Acceptance of Plea*

**{¶5}** In her first assignment of error, Arnwine alleges that the trial court failed to inform her of the maximum penalties and her ineligibility for probation before accepting her guilty plea.

> **In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contests without first addressing the defendant personally and doing all of the following:**

Case No. 16-21-04

**(a) Determining that the defendant is making the plea voluntarily with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions.**

**(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.**

**(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.**

Crim.R. 11(C)(2).

{¶6} A review of the record in this case shows the following dialogue occurred between the trial court and Arnwine prior to her entering her guilty plea.

**The Court: * * * you understand for the felony of the third degree there is a mandatory prison sentence –**

**The Defendant: Yes, ma'am.**

**The Court: -- of 12, 18, 24, 30, 36, 42, 48, 54, or 60 months?**

**The Defendant: Yes, ma'am.**

**The Court: And there is a fine of up to $10,000?**

**The Defendant: Yes, ma'am.**

**The Court: The Court would also be required to suspend your operator's license, uh, from two to ten years.**

**The Defendant:  Yes, ma'am.**

**The Court:  And that six points would be assessed on your driving record.**

**The Defendant:  Yes, ma'am.**

**The Court:  Do you understand the penalty for the improper handling of the firearm?**

**The Defendant:  Yes, ma'am.**

**The Court:  That would be a maximum of 12 months in prison and a maximum $2,500 fine.**

**The Defendant:  Yes, ma'am.**

**The Court:  And as to the misdemeanor of the first degree, the DUI, that would be a $1,000 fine maximum and 180 days in jail.**

**The Defendant:  Yes, ma'am.**

**The Court:  You understand?**

**The Defendant:  Yes.**

**The Court:  Also, as to that DUI, there would be six points total from the first charge to the misdemeanor DUI, six points total would be assessed on your driving record.**

**There is also, um, a maximum fine, I'm sorry, of $1,075 of which at least $350 is mandatory, and the Court under that charge could suspend your driver's license for one to three years.**

**The Defendant:  Yes, ma'am.**

**\* \* \***

**The Court:  You understand that prison terms for multiple charges, even if consecutive sentences are not mandatory, may be imposed consecutively by the Court?**

**The Defendant:  Yes, ma'am.**

**The Court:  Could you?**

**The Defendant:  Yes, ma'am.**

**The Court:  Thank you.  Do you understand that court costs, restitution, and other financial sanctions including fines, day fines, and the reimbursement for the cost of any sanction may also be imposed?**

**The Defendant:  Yes, ma'am.**

**\* \* \***

**The Court:  Do you understand a period of supervision by the Adult Parole Authority . . . after you're released from prison is mandatory for the first offense?**

**The Defendant:  Yes, ma'am.**

**The Court:  And optionalable [sic], optional for the second offense?**

**The Defendant:  Yes, ma'am.**

**The Court:  And would be for a period of three years?**

**The Defendant:  Yes, ma'am.**

**The Court:  And do you understand that a violation of any post-release control rule or condition can result in a more restrictive sanction while under post-release control and may result in increased duration of supervision or control up to the maximum term and reimprisonment even though you served the entire stated prison term imposed upon you by the Court for the offense?**

**The Defendant:  Yes, ma'am.**

**The Court: Do you understand that if you violate conditions of supervision while under post-release control, the parole board could return you to prison for up to nine months for each violation for a total of one-half of your originally stated prison term?**

**The Defendant: Yes, ma'am.**

**The Court: Do you understand that the Court is not required by law to impose a prison sanction in any of your cases, they may impose community control or non prison sanctions on you? Do you understand if you violate the terms or conditions of a community control sanction, this Court may extend the time for which you were subject to this sanction up to a maximum of five years, impose a more restrictive sanction, or imprison you for up to the maximum stated term allowed for the offense?**

**The Defendant: Yes, ma'am.**

**The Court: Do you understand the nature of these charges and the possible defenses that you may have to them?**

**The Defendant: Yes, ma'am.**

**The Court: Are you entering these pleas voluntarily and of your own free will?**

**The Defendant: Voluntarily, own free will, yes. Yes, ma'am.**

Tr. 4-9. The trial court then read the plea agreement, which included the sentencing recommendation. Tr. 10. The agreement read by the trial court indicated that the State was recommending Arwine serve a mandatory prison sentence of 36 months as to Count One, a basic prison sentence of nine months as to Count Four, and 90 days as to Count Five, with the sentences to be served concurrently. Tr. 10. The trial court did not discuss the possibility of judicial release, though the plea agreement, which was read into the record by the trial court, did indicate that the

-8-

State would defer to the wishes of the victim and the trial court regarding judicial release. Tr. 11 and Doc. 30 at 4. The plea agreement signed by Arnwine stated as follows.

> **I understand that the penalties for a felony of the third degree as charged in Count One of this case include a *mandatory prison* sentence of twelve (12) months, eighteen (18) months, twenty-four (24) months, thirty (30) months, thirty-six (36) months, forty-two (42) months, forty-eight (48) months, fifty-four (54) months, or sixty (60) months. The maximum fine possible is $10,000.00, *none* of which fine is mandatory.**
>
> **\* \* \***
>
> **I understand that the penalty for a felony of the fifth degree is six (6) months, seven (7) months, eight (8) months, nine (9) months, ten (10) months, eleven (11) months, or twelve (12) months prison, none of which is mandatory. The maximum fine possible is $2,500.00, none of which is mandatory**
>
> **I understand that he penalty for a misdemeanor of the first degree in this case is a jail sentence of up to one-hundred-eighty (180) days, *three (3) of which are mandatory*. The maximum fine for a misdemeanor of the first degree is $1,075.00, *$350.00 of which is mandatory*.**

Doc. 30 at 1-2.

{¶7} Arnwine argues that her plea was not voluntarily entered because 1) the trial court did not advise her of the maximum penalties and 2) because it was confusing as to whether she was eligible for judicial release or community control. Crim.R. 11 requires the trial court to notify a defendant of the maximum possible penalties before accepting a guilty plea. A review of the record in this case shows that the trial court did advise Arnwine of the possible penalties on all counts,

including that the sentence on Count One would be mandatory. Arnwine does not dispute that she was so advised, but claims that the trial court's statements were contradictory and confusing leading her plea to be involuntarily given.

{¶8} Arnwine argues that based upon this Court's prior holdings in *State v. Cook*, 3d Dist. Putnam No. 12-01-15, 2002-Ohio-2846, and *State v. Bush*, 3d Dist. Union No. 14-2000-44, 2002-Ohio-6146, this Court must find the plea was not voluntarily given. In *Cook*, this Court found a plea to be invalid because his counsel repeatedly stated that the defendant was eligible for judicial release after six months and the trial court, in its judgment entry, stated that the sentence was not mandatory. *Cook* is distinguishable from this case in that here, the trial court correctly, aside from the one arguably confusing statement, notified Arnwine at the change of plea hearing that a prison sentence as to Count One was mandatory. The judgment entry accepting the change of plea noted that Arnwine had been informed of the mandatory nature of the prison sentence. Doc. 31. Finally, the sentencing entry noted that the prison term as to Count One was mandatory. The facts of this case are very different from those in *Cook*.

{¶9} This Court in *Bush* also found a plea to be invalid when the trial court, counsel for the State and for the defendant, and the defendant all mistakenly believed that he was eligible for judicial release after 30 days as was indicated by the judgment entry. The judgment entry was signed by the judge, the attorneys and the defendant despite the fact that under the law, the defendant would not be eligible

for judicial release until he had served five years. *Bush* is also distinguishable from this case. Here, the trial court did not discuss judicial release and no one indicated that Arnwine would be eligible for judicial release. The only statement regarding it was made by the State, not the trial court, and it was only to state it had no position on it. These facts are very different from those in *Bush* where the defendant was improperly told that he was eligible to apply for judicial release after 30 days.

{¶10} In conducting a plea colloquy, "the trial judge must convey accurate information to the defendant so that the defendant can understand the consequences of his or her decision and enter a valid plea." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 26, 893 N.E.2d 462. Trial courts should attempt to comply with the requirements of Crim.R. 11 in all respects. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶ 19, 814 N.E.2d 51. "If a trial court fails to literally comply with Crim.R. 11, reviewing courts must engage in a multitiered analysis to determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights and, if there was a failure, to determine the significance of the failure and the appropriate remedy." *Clark, supra* at ¶ 30. If the trial court imperfectly explains nonconstitutional rights, such as the maximum possible penalties, a substantial compliance rule applies. *Id*. at ¶ 31. As long as the totality of the circumstances indicate that the defendant understood the implication of the plea, the plea may be upheld. *Id*. "A trial court fails to substantially comply with this rule, however, when it gives the defendant inaccurate information about the

maximum sentence that he is facing." *State v. George*, 9th Dist. Summit No. 29292, 2019-Ohio-3871, ¶ 7. If there is not substantial compliance regarding nonconstitutional rights, a reviewing court must determine whether the trial court partially complied or failed to comply with the rule. *Clark* at ¶ 32.

> **If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect. * * * The test for prejudice is "whether the plea would have otherwise been made." * * * If the trial judge completely failed to comply with the rule, e.g., by not informing the defendant of a mandatory period of postrelease control, the plea must be vacated. * * * "A complete failure to comply with the rule does not implicate an analysis of prejudice."**

*Id*.

{¶11} In this case, Arnwine repeatedly indicated that she understood what she was told, including that the sentence would be mandatory as to Count One. The written plea agreement also informed Arnwine of the potential sentences and the mandatory nature of a prison sentence as to Count One was stated two times and both times the word "mandatory" was in bold print. Doc. 30 at 1, 4. The record does show that the trial court misspoke at one point and indicated that none of the prison sentences were mandatory. Tr. 8. This one statement may arguably be considered as misinformation that could possibly affect the trial court's substantial compliance with Crim.R.11. However, before that statement, the trial court had indicated that the sentence to Count One was mandatory and then, while reading the plea agreement, again noted that the sentence as to Count One was mandatory. Tr.

4, 10. Thus, even if there was not substantial compliance with Crim.R. 11 regarding the nonconstitutional rights, the record shows there was partial compliance.

{¶12} Because there was at least partial compliance, this Court must review to see whether there was prejudice to Arnwine. Arnwine was repeatedly notified that a prison sentence was mandatory as to Count One. At no point did Arnwine question this even when the trial court misspoke. Arnwine did not raise the issue prior to sentencing or at the sentencing hearing on September 22, 2021, despite having over two months to consider it. Doc. 34. The motion to withdraw the plea of guilty was not filed until January 7, 2022, almost 3 and a half months after sentencing. Doc. 46. Additionally, the trial court, outside of reading what the State included in the plea agreement, did not suggest in any manner that Arnwine was eligible for judicial release or good time credit. Given the record before us, this Court does not find that Arnwine was prejudiced by the misstatement made by the trial court. The first assignment of error is overruled.

*Improper Handling of a Firearm in a Motor Vehicle*

{¶13} Arnwine claims in the second assignment of error that she lacked the required *mens rea* to be convicted of improper handling of a firearm in violation of R.C. 2923.16(D)(1). R.C. 2923.16(D)(1) requires that one "knowingly" have a loaded handgun in a motor vehicle while they are under the influence of alcohol. Initially this Court notes that Arnwine pled guilty to the offense. A guilty plea is "a complete admission of the defendant's guilt." Crim.R. 11(B)(1). "In entering a

guilty plea, a defendant 'is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.'" *State v. Morgan*, 181 Ohio App.3d 747, 2009-Ohio-1370, ¶ 23, 910 N.E.2d 1075 quoting *U.S. v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). A guilty plea includes an admission to the factual basis for each element of the charged offenses. *State v. Ryan*, 6th Dist. Ottawa Nos. OT-21-027, OT-21-028, 2022-Ohio-1888, ¶ 16.

{¶14} Here, Arnwine admitted that there was a firearm in the duffel bag in the trunk of the vehicle she was driving while under the influence of alcohol. Tr. 15-16. Arnwine did not deny that she was knowingly transporting the firearm after the State indicated that she had done so. Tr. 16. Arnwine, in her brief, points to alleged statements she made to the officer, however those statements are not in the record before this court.[1] Since Arnwine did not object to the statement by the State that she knowingly transported a firearm while driving under the influence of alcohol and pled guilty, thus admitting to the factual basis for each element including the mens rea, the trial court did not err in finding her guilty of the offense as charged. The second assignment of error is overruled.

*Withdrawal of Guilty Plea*

{¶15} In her third assignment of error, Arnwine alleges that the trial court erred by denying her motion to withdraw her guilty plea. "A motion to withdraw a

---

[1] Arnwine cites Plea Tr. 16 in her brief. A review of the arraignment transcript (12/15/2020) and the change of plea hearing (7/13/2021) show that the conversation quoted is not in the transcripts provided to this court.

plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. "A manifest injustice is a clear or openly unjust act; an extraordinary and fundamental flaw in the plea proceeding." *State v. Yapp,* 8th Dist. Cuyahoga Nos. 101247, 101248, 2015-Ohio-1654, ¶ 8, 32 N.E.3d 999. Thus a motion to withdraw a guilty plea after sentence will only be permitted in extraordinary cases. *Id.*

**{¶16}** Arnwine's first argument in support of this assignment of error claims that she was denied the effective assistance of counsel which prevented her from knowingly, intelligently, and voluntarily changing her plea to one of guilty, so she should have been allowed to withdraw her guilty plea.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**
>
> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. *See Vaughn v. Maxwell* (1965), 2 Ohio**

**St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164;** *State v. Jackson*, **64 Ohio St.2d [107] at 110–111, 18 O.O.3d [348] at 351, 413 N.E.2d [819] at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. "The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test." *State v. Walker*, 3d Dist. Seneca No. 13-15-42, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20. "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "The prejudice inquiry, thus, focuses not only on outcome determination, but also on 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180 quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶17} Arnwine claims that her counsel was ineffective because counsel 1) failed to challenge any of the evidence and 2) advised her to enter a plea agreement from which she received little, if any, benefit. Arnwine argues that counsel should have challenged the evidence regarding statements made by witnesses, the officer's decision to conduct field sobriety tests, the testing procedures used, and the admissibility of the chemical breath test. In other words, Arnwine appears to be claiming that her counsel was ineffective for failing to file a motion to suppress. "Failing to file a motion to suppress does not constitute ineffective assistance of

counsel per se." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65, 873 N.E.2d 858. For it to be considered ineffective assistance of counsel, "a defendant must prove that there was a basis to suppress the evidence in question." *Id*. citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 35, 817 N.E.2d 29.

{¶18} Here, Arnwine alleges that the statements by other drivers, the decision by the officer to conduct field sobriety tests, the results of the field sobriety tests, and the accuracy of the chemical breath test should all have been challenged. Although these issues certainly could have been the basis of a motion to suppress, Arnwine fails to point to anything in the record that would show why the trial court would likely have ruled in Arnwine's favor on said motion. Arnwine's argument is based solely upon supposition. A review of the record before this court provides no information about any of these alleged issues. Thus, this Court has nothing from which to determine that there was a reasonable basis for filing the motion to suppress or that the result would be any different if the motion had been filed.

{¶19} Arnwine also argues that she obtained very little, if any, benefit from the plea agreement. This argument is based upon her claim that the State could not have proven the elements of Counts Two and Three, which would have resulted in an acquittal on each of those counts, so Arnwine does not believe she benefitted from agreeing to plead guilty. The Ohio Supreme Court has said that counsel is not ineffective automatically for advising a client to enter a no contest plea to the offenses charged without getting a benefit. *State v. Spivey*, 81 Ohio St.3d 405,

418,1998-Ohio-437, 692 N.E.2d 151. In *Spivey*, the trial court noted that whether to enter a plea agreement is a tactical decision and that the defendant had received that for which he bargained. The Court also noted that the defendant did receive a benefit in the sentence and thus trial counsel was not ineffective. *Id.* Judicial review of tactical decisions made by counsel must be highly deferential. *State v. Bird*, 81 Ohio St.3d 582, 585, 1998-Ohio-606, 692 N.E.2d 1013.

{¶20} Trial counsel in this case made a tactical decision to recommend to Arnwine that she accept the deal. A review of the record shows that the State did indicate at the change of plea hearing that it was unlikely to prevail on Counts Two and Three, the two counts which were dismissed. Tr. 13, 16. The dismissal of two counts was not the only benefit of the plea agreement. In exchange for the guilty pleas, the State agreed to the following: 1) dismiss Counts Two and Three; 2) recommend a mandatory prison term of 36 months as to Count One, nine months as to Count Four, and 90 days as to Count 5 with the sentences to be served concurrently; 3) recommend a mandatory fine in the amount of $750.00 as to Count Four; 4) recommend the trial court order six points total be assessed to Arnwine's driving record; 5) defer to the trial court as to length of the mandatory license suspension. Doc. 30. The State fulfilled its side of the agreement. Although the trial court did impose lengthier sentences as to Counts Four (11 months) and Five (160 days), the trial court did order the sentences to be served concurrently. As a result, Arnwine received the benefit of her agreement. Arnwine could have been

sentenced to a mandatory sentence of 60 months on Count One rather than the 36 months of the agreement. Arnwine's claim that she received no benefit from the agreement is not supported by the record. This Court does not find that counsel's advice to enter the plea agreement was ineffective.

{¶21} Arnwine also makes two additional arguments in this assignment of error as to why she should have been allowed to withdraw her guilty plea. Arnwine claims that the trial court failed to comply with the requirements of Crim.R. 11 and that the trial court should not have accepted her plea to Count Four as she was not knowingly transporting a weapon. Both of these arguments were addressed above and found to lack merit. Therefore, the third assignment of error is overruled.

{¶22} Having found no error prejudicial to the Appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Wyandot County is affirmed.

*Judgment Affirmed*

**MILLER and SHAW, J.J., concur.**

**/hls**